Military pay; disability retirement; entitlement to disability retirement; presumption of fitness. — On February 29, 1980 the court entered the following order:
Before Nichols, Judge, Presiding, Kashiwa and Smith, Judges.
Plaintiffs object is to obtain a military disability annuity. This action, transferred from the United States District Court, is now deemed brought under the Tucker Act, 28 U.S.C. § 1491. It calls on us to review a refusal by the Army Board for Correction of Military Records (ABCMR) to hold that the plaintiff was disabled at the time of his release from active duty. It is deemed to be before us on cross-motions for summary judgment. He was serving as a major, having failed of selection as a lieutenant colonel, U. S. Army, though he was a lieutenant colonel, U. S. Army Reserve. He was an engineer officer stationed in Germany. He had health problems but worked for his retention on active duty, hoping to complete 20 years. An active duty board selected plaintiff for release from active duty by reason of substandard performance, acting pursuant to the Army reduction-in-force program, and the release took effect in June 1973. Meanwhile, on March 14, 1973, a medical board at the U. S. Army Hospital at Bremerhaven, Germany, gave plaintiff his preseparation physical and determined that he was medically unfit for active duty, but by special orders he was transferred to Walter Reed Hospital at Washington, D. C. The thrust of plaintiffs efforts is now to secure the affirmation of that determination and have his disability rated at over 30 percent.
The medical authorities at Walter Reed annexed an addendum determining that plaintiff was fit for duty despite their confirmation that his medical problems included arteriosclerosis, hypertension, and, on a psychiat *675 ric consultation, an obsessive compulsive personality with a chronic mild anxiety neurosis. Plaintiff had to be disabled 30 percent or more to recover the disability annuity he seeks, and medical boards have repeatedly requested that the case be put before a Physical Evaluation Board (PEB), the body which evaluates disabilities and determines what percentage they add up to. Plaintiff contends that his conceded disabilities add up to over 30 percent under applicable regulations and that the sole reason for refusing him PEB evaluation is advice to the Walter Reed medical board summarized as follows:
Comment. Although the patient is unfit for retention as defined in AR 40-501, the fact that he was performing his duties successfully at the time of his separation letter allows him to be placed in a category of "fit for separation.” (Per interpretation by PEBLO, WRAMC.)
The officer designated by this acronym is the PEB Liaison Officer at Walter Reed Hospital. The legal doctrine referred to by PEBLO is spelled out somewhat differently by the ABCMR. Should the legality of plaintiffs separation as "fit for duty” depend on his having performed his duties successfully, up to separation, it is clear that inquiry should be made as to the reason for plaintiffs passover and his selection for release by the active duty board. Counsel for defendant speculates that the reasons for plaintiffs inability (apparently) to please his superiors in Germany were primarily psychiatric, and that the disabling ingredients of plaintiffs situation, the arteriosclerosis and the hypertension, were unconnected. This is a matter that has not been ifivestigated scientifically. We may take judicial notice that arteriosclerosis (a chronic disease characterized by abnormal thickening and hardening of the arterial wall) and hypertension (abnormally high blood pressure) in common belief do, at least at times, have their effect on the kind of behavior pattern which is so necessary for an Army officer to maintain. Certainly any notice that plaintiff was performing his duty "successfully” despite his disabilities, if it is relevant, should be substantiated. The PEB, apparently through its liaison officer, has been handing down pronouncements in this matter without, apparently, taking jurisdiction and giving it the consideration plaintiff asserts his case merits.
*676 The ABCMR took jurisdiction, conducted a hearing, and furnished extended findings and conclusions, unfavorable to plaintiff, who was held to have been "fit” when separated. The principal if not the sole reason for the decision appears to have been advice from the U. S. Army Physical Disability Agency (USAPDA) summarized by the ABCMR as follows:
1. that on 11 October 1973 the USAPDA in a comment to this Board stated that in accordance with instructions received from the Department of Defense certain changes have been made in the policies relating to separations or retirements because of physical disability; that the change which most significantly affects the applicant’s case provides that the continuous performance of duty by a member whose service may soon be terminated for reasons other than physical disability gives rise to a presumption of fitness which may be overcome if the evidence establishes (1) that the member in fact was physically unable to perform the duties of his office, grade, rank or rating even though he was improperly retained in the office, grade, rank or rating for a period of time and (2) acute grave illness or injury or other deterioration of physical condition that occurred immediately prior to or coincidental with the members separation for reasons other than physical disability rendering him unfit for duty; that, in summary, the applicant would have been found fit for duty had this case been processed by a PEB regardless of the finding of the Medical Board, U. S. Army Hospital, Bremerhaven, with or without the WRAMC Addendum; that since the hospital transferred the applicant to WRAMC the medical decision on disposition of his case properly belonged to WRAMC commander; and that since the WRAMC Addendum reported him fit for duty referral of his case and consideration by a PEB was not required;
The Secretary of Defense, under date of January 29, 1973, transmitted to the Service Secretaries eight guidelines of which guideline six and seven appear to have been the source of the ideas, above stated, and the ABCMR says they are implemented by AR 40-501 and AR 635-40. The Secretary of Defense directive is in the record, and the board reflects it to a point. However, the Secretary of *677 Defense further spells out that evidence of unfitness must be "clear and convincing” to overcome the presumption created by him, when it applies, whereas in the case of allegedly disabled persons not being separated for other reasons, a preponderance of evidence of unfitness suffices. Thus he did not wish to cut off claimants to disability retirements entirely if in the disfavored category, but it is not clear to us how entitlement on "clear and convincing” evidence works in practice. One who was disabled before separation but was "improperly retained,” i.e., retained perhaps through someone’s misconduct or negligence, is an excepted case. One who had an acute grave illness or injury or other deterioration that apparently was sudden in nature, occurring shortly before the separation, is another. Plaintiff seems to be right in the target area; neither exception applies to him. The plain meaning of everything the board says is that the standards of entitlement to disability retirement are different and significantly more severe when the asserted disability is discovered on the termination physical of one "selected out” as plaintiff was.
There does not seem to be any statutory foundation for a distinction of this character, and it ignores the possibility, very real as it seems to us, that the gradual onset of physical disability may sap the fitness of an individual to meet the high standards of the military profession, in ways not perceivable to others or even the victim himself. There may be relatively more malingerers among the persons claiming physical disability when such persons have been "selected out,” but the military medical establishment would appear well equipped to detect such persons, without making use of evidentiary presumptions that may not conform to fact.
The statute authorizing disability retirement, 10 U.S.C. § 1201, says the Service Secretary "may” retire Service members because of physical disability, if certain preconditions are met. The right to such retirement has always been treated as an entitlement not to be withheld at the Secretary’s whim. The right belongs to persons who are determined factually to be unfit to perform the duties of their office, grade, or rating, because of physical disability, which must be permanent. Persons disabled by their own misconduct are expressly excluded. If the member has not *678 completed 20 years of service, as is plaintiffs case, the disability must be rated 30 percent or more. This is the statutory scheme.
The Secretary of Defense has placed a gloss upon it in that he has created two separate categories of service members, those about to be separated for other than disability reasons (with a few stated exceptions), and all others, and he has erected a new hurdle for the former to surmount, that does not apply to the latter, in obtaining disability retirement.
As already stated, plaintiff appears to stand right in the target area of the Secretary of Defense’s directive. The PEB or its spokesperson or persons appears to have believed this, and hence the refusal even to consider the case. For this reason, it does not appear plaintiff can prevail if the Secretary’s directive was a proper implementation of 10 U.S.C. § 1201, and if the decision of the ABCMR applied the directive in a proper manner. Before we proceed to adjudicate these issues, however, we need answers to questions suggested but not answered in the record before us. The following list is not meant to be exclusive; counsel and officials interested may think of others:
1. Whether plaintiffs diseases and physical and psychiatric deficiencies, as enumerated by the various medical boards that have considered his case, and elsewhere in the record, have contributed to plaintiffs inability, while on active service, to obtain favorable OER’s to avoid being passed over for promotion, and to avoid being "selected out.”
2. Whether plaintiff performed his duties "successfully,” as stated by the PEBLO, WRAMC.
3. Whether the ABCMR decision of March 19, 1975, is based on requiring plaintiff to prove his unfitness by a "preponderance” of the evidence, or by "clear and convincing” evidence.
4. Whether, absent the Secretary of Defense’s directive, and the implementation of it in Army regulations, the ABCMR would still have deemed plaintiff fit for duty at the time of his separation.
5. What justification in fact and experience exists for erecting more rigid standards of proof of medical unfitness in the case of persons being separated from active duty for e.g., unsatisfactory performance.
*679 6. How the distinction between "preponderance” of the evidence, and "clear and convincing” evidence is effectuated in the case of medical determinations of the kind here involved, and what difference it makes in practice.
A remand to the Secretary of the Army rather than the ABCMR seems appropriate, because in the Army the ABCMR only recommends, and moreover, the Secretary may wish to make use of Army agencies other than the ABCMR, such as the PEB, the USAPDA, and the Surgeon General. The Secretary of Defense may wish to participate in view of his predecessor’s role in erecting the hurdles that confronted plaintiff.
Accordingly, the cause is remanded to the Secretary of the Army with instructions to respond, or have the ABCMR respond, to the foregoing questions, to furnish any other information that may appear relevant, to hear the parties as may be necessary in accordance with this order, and in general to return the case with a record that will facilitate a prompt adjudication. We point out in passing that the existing administrative record, originally furnished to the U. S. District Court in 1975, is not in such shape that this court can make as much use of it as we would wish. Until receipt of the Secretary’s response, decision on these cross-motions is deferred. Counsel for defendant is designated to report on the progress of the case every six months, until it is returned to the court.
IT IS SO ORDERED.
Plaintiffs request for modification was denied May 30, 1980.